IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JAY A. LIBBEY, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § CIVIL ACTION NO. H-09-2004 |
| | § |
| MICHAEL J. ASTRUE, | § |
| COMMISSIONER OF THE | § |
| SOCIAL SECURITY ADMINISTRATION, | § |
| | § |
| Defendant. | § |

<u>MEMORANDUM OPINION</u>

Pending before the court[1] are Plaintiff's Motion for Summary Judgment (Docket Entry No. 17) and Defendant's Cross Motion for Summary Judgment (Docket Entry No. 15).  The court has considered the motions, all relevant filings, and the applicable law.  For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Cross Motion for Summary Judgment is **GRANTED**.

## I. Case Background

Plaintiff Jay A. Libbey ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner") regarding Plaintiff's claim for

---

[1]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry Nos. 13-14.

disability insurance benefits under Title II of the Social Security Act ("the Act").

## A. Procedural History

Plaintiff filed for disability benefits on May 14, 2004, claiming an inability to work since May 25, 1989.[2]  Plaintiff was last insured for benefits on September 30, 1995.[3]  Plaintiff was treated for back pain between May 25, 1989, and September 30, 1995, (the "relevant period").[4]  After his application was denied at the initial[5] and reconsideration[6] levels, Plaintiff requested a hearing by an Administrative Law Judge of the Social Security Administration ("ALJ").[7]  The ALJ granted Plaintiff's request and conducted a hearing in Houston, Texas, on June 6, 2006.[8]  After listening to testimony presented at the hearing and reviewing the medical record, the ALJ issued an unfavorable decision on August 7, 2006.[9]  The ALJ concluded that Plaintiff had no severe impairments or combination of impairments that would entitle him to disability

---

[2]   Transcript of the Administrative Proceedings ("Tr.") 55-58.

[3]   Tr. 229.

[4]   See generally  Tr. 97-99, 103-49, and 161-97.

[5]   Tr. 25-29.

[6]   Tr. 32-35.

[7]   Tr. 36-37.

[8]   Tr. 198-219.

[9]   Tr. 10-19.

benefits.[10]

On, December 1, 2006, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner.[11]  Having exhausted his administrative remedies,[12] Plaintiff filed a timely civil action for judicial review of the Commissioner's unfavorable decision and, subsequently, a motion for summary judgment.[13]  The district court addressed the ALJ's finding on the severity of Plaintiff's impairments.[14]  On March 26, 2008, the court wrote:

> In sum, substantial evidence supports the ALJ's finding of nonseverity for Hepatitis C, chronic pancreatitis or irritable bowel syndrome but substantial evidence does not support the ALJ's nonseverity finding concerning Libbey's complaints of chronic back pain . . . Because Libbey has made a threshold showing that his medically determinable impairment significantly limits his ability to do basic work activities, the ALJ should proceed to the next step in the five step sequential evaluation process.[15]

The Judge found that Plaintiff's back pain met the threshold severity requirements and remanded the case to the ALJ to proceed

---

[10]     Tr. 19.

[11]     Tr. 3-5.

[12]     See Harper v. Bowen, 813 F.2d 737, 739 (5th Cir. 1987), for a summary of the administrative steps a disability claimant must take in order to exhaust his administrative remedies.

[13]     See Libbey v. Barnhart, Civil Action No. 4:07-362, (S.D. Tex. Jan. 25, 2007).

[14]     See id. at Docket Entry No. 11, Memorandum and Order Granting Plaintiff's Motion for Summary Judgment ("Mem."), pp. 12-29.

[15]     Mem. at p. 29.

with the next step in the sequential evaluation process.   The ALJ then commenced Plaintiff's evaluation pursuant to the court's decision and issued a decision on March 6, 2009. The ALJ found that, although Plaintiff suffered from a severe impairment during the relevant period, degenerative disc disease, Plaintiff retained the residual functional capacity to perform sedentary work: "The claimant is able to lift and carry 10 pounds occasionally and 5 pounds frequently, stand[] and walk[] about 2 hours in an 8 hour day, and sit[] for at least 6 hours in an 8 hour day.  The claimant [has] to be allowed to sit or stand at will."[16]  Furthermore, the court found that "considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed."[17]  Therefore, "[t]he claimant was not under a disability, as defined in the Social Security Act, at any time from May 25, 1989, the alleged onset date, through September 30, 1995, the date last insured."[18]

Plaintiff now appeals the ALJ's second decision, which, after review by the Appeals Council, is the Commissioner's final decision.

**B. Plaintiff's Medical History**

---

[16]     Tr. 229.

[17]     Tr. 233.

[18]     Tr. 234.

4

**1. Back Treatment**

Plaintiff's severe impairment began in 1989.  While working at an apartment complex, Plaintiff injured his back carrying a washing machine up a flight of stairs.[19]  Shortly after his injury, Plaintiff sought treatment from Phillip Bellan, M.D., ("Dr. Bellan").  Dr. Bellan wrote a letter dated June 15, 1989, stating that upon examination of Plaintiff, he observed Plaintiff to be in "moderate distress with significant paralumbar spasm."[20]  However, Dr. Bellan observed "no neurological deficit whatsoever."[21]  The X-rays of Plaintiff's lumbar spine were "unremarkable."[22]  Dr. Bellan opined that Plaintiff suffered from acute lumbar strain with sciatica in the right leg.[23]

Dr. Bellan referred Plaintiff to Edward Talmage, M.D., ("Dr. Talmage").[24]  Dr. Talmage began treating Plaintiff on July 7, 1989.[25]  Dr. Talmage's initial impression of Plaintiff's condition was that he had suffered a "recent acute lumbar sprain injury with lumbar sacral nerve root irritation and probable epidural adhesions,

---

[19]    Tr. 201.

[20]    Tr. 149.

[21]    Tr. 149.

[22]    Tr. 149.

[23]    Tr. 149.

[24]    Tr. 202.

[25]    Tr. 147.

mechanical back pain with lumbar spondylosis, [and] possible chronic cervical sprain injury by history."[26]  Although Dr. Talmage testified that the last time he saw Plaintiff was in early 1990,[27] the record suggests that Plaintiff was last seen by him in August, 1990.[28]

There are indications that Plaintiff may have received some treatment for his back during the period between late 1990 and early 1995.  Treatment notes from 1995 indicate that Plaintiff was referred by a "Dr. LaChina" and that he was subsequently seen by a "Dr. Faiz."[29]  However, no medical records confirm such treatment.

On June 14, 1995, Plaintiff saw Marvin C. Chang, M.D., ("Dr. Chang").[30]  At that time, Dr. Chang observed the clinical findings to be "consistent with radiculitis with possible disk pathology."[31] A magnetic resonance imaging scan ("MRI") performed on Plaintiff was "normal."[32]  On July 19, 1995, Dr. Chang noted that the results of a repeat MRI were negative, a result that was "somewhat puzzling."[33]  Plaintiff was last seen by Dr. Chang for treatment of

---

[26]     Tr. 147.

[27]     Tr. 216.

[28]     Tr. 103.

[29]     Tr. 93.

[30]     Tr. 99.

[31]     Tr. 100.

[32]     Tr. 100.

[33]     Tr. 98.

6

his back on September 20, 1995.[34]

## 2. Pain

Plaintiff's medical records indicate that he experienced pain related to his back injury during the relevant period. Dr. Bellan's 1989 letter stated that Plaintiff was experiencing "sciatica-like pain going down the posterior aspect of his right leg into his foot."[35] Dr. Talmage testified that Plaintiff was "disabled by the pain" during his final visit in 1990.[36] During his June 14, 1995 examination of Plaintiff, Dr. Chang observed that Plaintiff was experiencing pain in his mid and low back area with pain radiating down his legs.[37] In August 1995, Dr. Chang reported Plaintiff as "status quo," still experiencing significant back discomfort.[38] Plaintiff was given epidural steroid injections and reported doing "reasonably well" thereafter.[39] Plaintiff's last two appointments with Dr. Chang were in September 1995, prior to expiration of his insured status on September 25, 1995.[40] At the first meeting, Dr. Chang observed that Plaintiff appeared to have

---

[34]    Tr. 97.

[35]    Tr. 149.

[36]    Tr. 216.

[37]    Tr. 99.

[38]    Tr. 98.

[39]    Tr. 98.

[40]    Tr. 97.

"very significant" pain over his right sacroiliac joint area and right piriformis area.[41]  On September 20, 1995, Plaintiff reported getting two to three days of reasonable relief following another steroid injection, before the eventual return of pain.[42]

On June 6, 2006, Dr. Talmage testified that after reviewing the Plaintiff's medical records, Dr. Chang's findings and treatment of Plaintiff correlated "almost exactly" with what he had observed in 1989 and 1990.[43]  He then offered his opinion that, based on the records he had reviewed, Plaintiff had been experiencing severe pain and, because of the limitation of his back function and pain medication, would have been unable to sit, stand, or walk.[44]

**3. Depression**

There is evidence that Plaintiff may have suffered from depression during the relevant period.  Dr. Talmage testified that Plaintiff was "very depressed" the last time he saw him.[45]  Dr. Talmage referred Plaintiff to Royce Watts, Ph.D., ("Dr. Watts") for a psychological evaluation.[46]  Dr. Watts stated that his evaluation of Plaintiff "revealed a moderately severe adjustment reaction with

---

[41]    Tr. 97.

[42]    Tr. 97.

[43]    Tr. 217.

[44]    Tr. 217.

[45]    Tr. 216.

[46]    Tr. 216.

8

symptoms of anxiety and depression."[47]   Watts recommended ten therapy sessions.[48]   The record contains no evidence indicating whether Plaintiff ever received the recommended therapy.   The only other evidence that Plaintiff may have suffered from depression during the relevant period is Dr. Chang's September 20, 1995 notation, observing that Plaintiff appeared "very tearful" and prescribing twenty milligrams of Paxil "to see if some mood altering can be achieved in the patient."[49]

## 4. Activities of Daily Living

A daily activity questionnaire, submitted by Plaintiff when he filed his claim, indicated that on an average day, despite the many limitations from his impairment, he could still take his wife to work, eat breakfast, go for a walk, read, watch television, listen to music, and play a guitar.[50]

## II. Legal Standards

## A. Standard of Review

This court's review of a final decision by the Commissioner denying disability benefits is limited to determining (1) whether substantial record evidence supports the decision and (2) whether the ALJ applied proper legal standards in evaluating the evidence.

---

[47]     Tr. 114.

[48]     Tr. 114.

[49]     Tr. 97.

[50]     Tr. 69-70.

9

Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).

If the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive, and this court must affirm. Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990). "Substantial evidence is something more than a scintilla but less than a preponderance." Carey v. Apfel, 230 F.3d 131 (5th Cir. 2000) (citing Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995)). "Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Id. (citing Villa v. Sullivan, 895 F.2d 1019, 1021-22 (5th Cir. 1990)). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Under this standard, the court must review the entire record but may not reweigh the record evidence, determine the issues de novo, or substitute its judgment for that of the Commissioner. Brown, 192 F.3d at 496.

## B. Standard to Determine Disability

In order to obtain disability benefits, a claimant bears the ultimate burden of proving he is disabled within the meaning of the Act. Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991). Specifically, under the legal standard for determining disability, the claimant must prove he is unable "to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); see also Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). The existence of such disability must be demonstrated by "medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), (d)(5); see also Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is disabled under this standard, Social Security Act regulations ("regulations") provide that a disability claim should be evaluated according to a sequential five-step process:

> (1) An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings;

> (2) An individual who does not have a "severe impairment" will not be found to be disabled;

> (3) An individual who meets or equals a Listing will be considered disabled without the consideration of vocational factors;

> (4) If an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made;

> (5) If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if other work can be performed.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. § 404.1520. The claimant bears the burden of proof on the

11

first four steps of the inquiry, while the Commissioner bears it on the fifth. <u>Crowley v. Apfel</u>, 197 F.3d 194, 198 (5th Cir. 1999); <u>Brown</u>, 192 F.3d at 498. The Commissioner can satisfy this burden either by reliance on the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner satisfies his step-five burden of proof, the burden shifts back to the claimant to prove he cannot perform the work suggested. <u>Muse v. Sullivan</u>, 925 F.2d 785, 789 (5th Cir. 1991). The analysis stops at any point in the process upon a conclusive finding that the claimant is disabled or not disabled. <u>Greenspan</u>, 38 F.3d at 236.

### III. Analysis

**A. Summary of Parties' Arguments**

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits.  In his motion for summary judgment, Plaintiff contends that the ALJ's decision is not supported by substantial evidence and that the ALJ did not follow proper legal procedures.  Specifically, Plaintiff argues that the ALJ erred as a matter of law in determining Plaintiff's RFC to be sedentary. The Commissioner, on the other hand, contends that the ALJ employed proper legal standards in reviewing the evidence and that the ALJ's decision is supported by substantial evidence of record.  The Commissioner therefore maintains the ALJ's decision should stand.

Plaintiff appears to take issue with the ALJ's findings at steps four and five of the sequential evaluation process only to the extent that they are affected by an allegedly erroneous RFC determination.   Therefore, the court will examine the ALJ's decision to determine whether proper legal standards were used and whether there is substantial evidence to support the ALJ's finding that Plaintiff had the RFC to perform sedentary work during the relevant period.

## B. Determination of Plaintiff's RFC

Plaintiff generally contends that the ALJ committed error both as a matter of law and on the sufficiency of the evidence in his analysis of Plaintiff's RFC.   In support of these contentions he submits five specific arguments.   Plaintiff argues that, in making his RFC determination, the ALJ committed error by (1) failing to address all the demands of sedentary work; (2) failing to set forth in his decision whether Plaintiff could perform these demands on a regular and continuing basis; (3) failing first to identify Plaintiff's functional limitations and then assess his work-related abilities on a function-by-function basis; (4) failing to consider all evidence from treating doctors and failing to give reasons for rejecting Plaintiff's treating physician's opinion; and (5) finding that Plaintiff's testimony lacked credibility with regard to his pain and not supporting the finding as required by the Act.   The court will discuss each of these specific arguments in turn.

13

**1. Demands of Sedentary Work**

Plaintiff alleges that the ALJ's finding that he had the RFC to perform sedentary work was incorrect.  In making this assertion, Plaintiff contends that the ALJ failed to fully address all the demands of sedentary work.  This court does not agree.

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a)(<u>see also</u> Social Security Ruling ("SSR") 96-9p, 1996 SSR LEXIS 6).  Plaintiff states that "the ALJ failed to assess and set out a restriction of standing and sitting for a specific interval of time; he did not assess any restriction in walking or in pushing/pulling . . . ."[51]  Plaintiff supports his contention by citing <u>Myers v. Apfel</u>, 238 F.3d 617, 621 (5th Cir. 2001), where the ALJ was charged with error for failing to fully address the demands of sedentary work including standing, walking and pushing/pulling.

First, Plaintiff's assertion that the ALJ failed to set out a restriction on standing and sitting for a specific interval of time is perplexing in light of the ALJ's determination that Plaintiff

_____

[51]   Plaintiff's Motion for Summary Judgment, Docket Entry No. 17, ("PMSJ"), p. 7.

14

was capable of "standing and walking about 2 hours in an 8 hour day[] and sitting for at least 6 hours in an 8 hour day."[52] Plaintiff's functional limitations with respect to standing and sitting were further acknowledged by the inclusion of an at-will sit/stand option in Plaintiff's RFC.

Second, to the extent that Plaintiff offers <u>Myers</u> to suggest that Plaintiff's ability to push/pull must be assessed with respect to sedentary work, that interpretation is inconsistent with the sedentary work demands outlined in 20 C.F.R. § 404.1567(a). Furthermore, SSR 96-9p cautions that "[l]imitations or restrictions on the ability to push or pull will generally have little effect on the unskilled sedentary occupational base."

The Fifth Circuit has observed that while the Social Security Administration's rulings are not binding on the court, they may be consulted when the statute at issue is unclear or provides little guidance. <u>B.B. ex. rel. A.L.B. v. Schweiker</u>, 643 F.2d 1069, 1071 (5th Cir. Unit B 1981).  In <u>Myers</u>, the court noted that the Fifth Circuit frequently relies upon these rulings in evaluating ALJ decisions. 238 F.3d at 620.  Notably, neither the SSRs nor the regulations require discussion of Plaintiff's push/pull capabilities.

The ALJ in <u>Myers</u> also failed to fully address several of the

---

[52]     Tr. 229.

15

strength demands of sedentary work.  He found only that the plaintiff could sit, lift, and carry ten pounds and would need a sit/stand option with a break to stretch every thirty minutes.  Id. at 621.  Unlike this case, the ALJ in Myers did not address standing or walking.  Furthermore, the Myers court also faulted the ALJ for relying on the opinion of a non-examining ME in the face of the contradictory opinion of a treating physician and for failing to support the decision with substantial evidence.  Id. at 621. Simply put, Myers does not suggest that the failure to mention push/pull capabilities alone is reversible error.

## 2. Regular and Continuing Basis

Plaintiff also alleges that the ALJ failed to consider the strength demands of sedentary work on a regular and continuing basis.[53]  This court disagrees with Plaintiff's assertion that his RFC was not properly assessed.

Plaintiff again directs the court's attention to Myers, where the ALJ's RFC determination was remanded in part for failure to address the concerns of SSR 96-8p and SSR 96-9p.  Relevant to this issue, SSR 96-8p states:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)[] and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case

---

[53]     PMSJ at p. 7.

16

record.

SSR 96-9p similarly provides that:

> RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis; i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule. It is not the least an individual can do, but the most, based on all of the information in the case record.

Additionally, in determining that any plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a), an ALJ makes the determination pursuant to the assessment criteria outlined in 20 C.F.R. § 404.1545, which provides that "[w]hen [ALJs] assess your physical abilities, [they] first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis."

Therefore, an assessment of RFC is necessarily an assessment of an individual's abilities to perform work-related tasks on a regular and continuing basis. In the case before this court, the ALJ specifically stated that Plaintiff's RFC determination was based on "his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments."[54] Unless the record lacks substantial evidence to support the ALJ's finding, his assessment of a plaintiff's abilities to perform designated strength demands on a regular and continuing basis must

---

[54]    Tr. 228.

stand.

Plaintiff again seeks to extend the ruling in <u>Myers</u> beyond its limits, claiming that, as in <u>Myers</u>, the ALJ in the instant case failed to set out whether the plaintiff could perform the strength demands of sedentary work on a regular and continuing basis.[55] The <u>Myers</u> court observed a wealth of medical information contradicting the ALJ's assessment which, "[p]erhaps most importantly," was based solely on the opinion of an ME who did not examine or treat the plaintiff. 238 F.3d at 621. The court in <u>Myers</u> concluded that the medical evidence as a whole indicated that the plaintiff could not perform the demands of sedentary work on a regular and continuing basis. <u>Id.</u>

Based on all the information in the case record, this court concludes that substantial evidence supports the ALJ's finding that Plaintiff was capable of performing sedentary work demands on a regular and continuing basis during the relevant period.  Plaintiff failed to produce any medical evidence for a substantial portion (1991 through 1994) of the relevant period, much less any that suggested he was unable to perform sedentary work.  Moreover, objective medical evidence from 1989, 1990, and 1995; the opinion evidence of Dr. Bellan, which did not place any specific functional limitations on Plaintiff; and Plaintiff's activities of daily

---

[55]     PMSJ at p. 7.

living are all consistent with an ability to perform sedentary work on a regular and continuing basis.  An additional indication that Plaintiff's abilities were in fact assessed on a regular and continuing basis is that, unlike in Myers, the ALJ discussed Plaintiff's ability to sit, stand, and walk in terms of a conventional eight-hour work day.

## 3. Function-by-Function Basis

Next, Plaintiff charges the ALJ with reversible error for failing to address the physical functions of sedentary work on a function-by-function basis as required by SSR 96-8p.  Plaintiff points to Bornette v. Barnhart, 466 F. Supp. 2d 811 (E.D. Tex. 2006), as an analogous case where similar error occurred.  The court disagrees.

In Bornette, the court observed that:

> ALJ Crump found that plaintiff has [an RFC] for 'a significant range of light work' with specified limitations.  However, ALJ Crump did not incorporate a function-by-function assessment into his decision. ALJ Crump only recited strength demands for light work generally, and such recitation clearly does not suffice as the type of individualized assessment required by Regulation 20 C.F.R. § 404.1545(b) and Social Security Ruling 96-8p.

Id. at 815, 816.  In other words, the ALJ in Bornette did not set out the weight, frequency, or duration with which each strength demand applied to the plaintiff; he simply concluded that plaintiff was generally capable of performing each demand.

The facts at hand are distinguishable from Bornette because

the ALJ does in fact incorporate a function-by-function assessment into his decision.   The ALJ specifically addressed each and every demand of sedentary work on a function-by-function basis, determining that "[t]he claimant is able to lift and carry 10 pounds occasionally and 5 pounds frequently, stand[] and walk[] about 2 hours in an 8 hour day, and sit[] for at least 6 hours in an 8 hour day."[56]   Not only does the ALJ discuss every separate function of sedentary work, but also the specific weight, duration, and frequency with which each may apply to Plaintiff.

Such specific consideration of each strength demand required by sedentary work is not comparable to the mere recitation of general strength demands evident in Bornette.

### 4.  Treating Physicians' Opinion Evidence

Plaintiff contends that the ALJ did not consider all evidence from treating physicians and rejected it without good cause. Plaintiff's motion for summary judgment urges the court to consider Dr. Talmage's opinion that Plaintiff was "disabled by the pain" and "unable to work,"[57] in addition to his opinion that Plaintiff was unable to do anything because he could not sit, stand, or walk.[58]

---

[56]     Tr. 229.

[57]     Tr. 216.

[58]     Tr. 217.

20

a. **"Disabled"**

Plaintiff directs the court to <u>Newton v. Apfel</u>, 209 F.3d 448 (5th Cir. 2000), asserting that the ALJ did not provide good cause for rejecting Dr. Talmage's opinion that Plaintiff was disabled. As the record indicates, Dr. Talmage only treated the Plaintiff briefly during the relevant period: immediately after his injury in 1989 through early 1990.[59]   More importantly, Dr. Talmage's conclusory statements that Plaintiff was disabled and unable to work are determinations that are within the province of the Commissioner and not medical sources:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is 'disabled' or 'unable to work,' or make similar statements of opinions . . . . Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p, 1996 SSR LEXIS 2.  The ALJ has sole responsibility for determining disability status.    <u>Newton</u>, 209 F.3d at 455. Furthermore, SSR 96-5p provides that "[i]f the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."

---

[59]    Tr. 216.

21

In Newton, the court held that "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." 209 F.3d at 455 (internal quotations omitted).  However, the ALJ ultimately may give less weight to the medical opinion of any physician when the opinions are conclusory, unsupported, or otherwise incredible. Greenspan, 38 F.3d at 237. When deciding to do so, the ALJ must indicate the specific reasons for discounting the treating source's medical opinion. See SSR 96-2p, 1996 SSR LEXIS 9.  The Newton court concluded that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."

The standard announced in Newton does not apply to these facts because Dr. Bellan's opinion is inconsistent with Dr. Talmage's opinion that Plaintiff was disabled.  Dr. Bellan diagnosed Plaintiff with acute lumbar strain, but did not opine that he was disabled.  Furthermore, Dr. Bellan did not place any specific functional limitations on Plaintiff.  Therefore, Dr. Bellan's opinion represents reliable medical evidence of an examining

physician that is inconsistent with Dr. Talmage's.  While Dr. Bellan's diagnosis may not be wholly inconsistent with Dr. Talmage's diagnosis, the absence of restrictions on Plaintiff's activities is inconsistent with Dr. Talmage's opinion that Plaintiff was completely disabled. Also, in <u>Newton</u>, the ALJ rejected the testimony of the plaintiff's treating physician, relying instead on the testimony of a non-examining ME.  The case before this court presents a different situation where there are competing opinions of two examining physicians.

While Dr. Talmage is free to offer his opinion whether Plaintiff is disabled, because physicians often define disability differently from the Act, it is ultimately the ALJ's responsibility to determine Plaintiff's disability status.

**b. Plaintiff could not sit, stand or walk**

In addition to his opinion that Plaintiff was "disabled," Dr. Talmage also asserts the following: "the records that I have reviewed showed that he was severely afflicted by the pain of his condition and because of medications and the limitations of his back functions . . . . He couldn't sit.  He couldn't stand.  He couldn't walk."[60]   Plaintiff asserts that the ALJ offered no explanation for its rejection of Dr. Talmage's opinion as required by 20 C.F.R. § 404.1527(d)(2).  The court notes, however, that Dr. Talmage's opinion, was not based exclusively his treatment or

---

[60]   Tr. 217.

examining relationship with Plaintiff during the relevant period but instead on a review of Plaintiff's records. Dr. Talmage observed that his diagnosis was "almost exactly" consistent with Dr. Chang's records. Like Dr. Talmage, though, Dr. Chang's contact with Plaintiff during the relevant period was brief; the majority of treatment received by Plaintiff took place after September 30, 1995, the end of the relevant period.[61]

Plaintiff claims that, in rejecting Dr. Talmage's opinion, the ALJ failed to consider the nature and extent of the treatment relationship, the physician's length of treatment, frequency of examination, consistency of the opinion with the record and specialization of the treating physician as required by 20 C.F.R. § 404.1527.[62] However, it is apparent from the ALJ's discussion that Dr. Talmage's opinion was not rejected outright, but considered along with all other evidence in the case record. Furthermore, the ALJ did offer an explanation for his RFC determination despite Dr. Talmage's opinions, citing Dr. Talmage's treatment notes, Dr. Chang's treatment notes, Plaintiff's activities of daily living, and the opinion evidence of Dr. Bellan.[63]

---

[61]    Tr. 97-99, 161-97.

[62]    Plaintiff's Response to Defendant's Motion for Summary Judgment ("PRDMSJ"), Docket Entry No. 19, p. 3.

[63]    Tr. 231.

The ALJ's lengthy discussion of the Plaintiff's medical history, including treatment by Drs. Talmage, Bellan, and Chang, demonstrates that he considered Dr. Talmage's opinions and found them to be inconsistent with other objective medical evidence in the record.  The ALJ considered all relevant evidence in the case record, including Plaintiff's medical history and statements made by him concerning what he could still do despite his injury.  In his decision, the ALJ noted the objective clinical findings and observed that "the claimant has no neurological deficits, no serious orthopedic abnormalities, and no significant dysfunctioning of the bodily organs that would preclude a sedentary level of exertion."[64]  In addition, the ALJ found:

> [t]he claimant's activities of daily living were consistent with an ability to perform sedentary work. When the claimant filed his application, he reported that he was able to take his wife to work, go for a walk, and listen to music.  He was able to play a guitar.[65]

The ALJ in this case did not disregard the opinions of Dr. Talmage as the Plaintiff urges, but instead considered the opinion in light of all evidence in the record, determining that it was not fully supported by the evidence.

Finally, the nature and extent of Dr. Talmage's relationship with Plaintiff, including the length of treatment and frequency of examination, lasted only until January 1990.  For the majority of

---

[64]    Tr. 231.

[65]    Tr. 232.

the relevant period (1991 through 1994) it is not clear what
doctor, if any, Plaintiff saw for therapy or treatment of his
ailments.   Therefore, because Dr. Talmage's statement about
Plaintiff's functional capabilities during the entire relevant
period is mostly unsubstantiated, inconsistent with Dr. Bellan's
assessment, and contrary to other objective evidence, the ALJ's
RFC determination is supported by substantial evidence.

**5. Pain and Credibility**

Plaintiff further asserts that the ALJ's credibility finding,
with respect to the degree of pain professed by Plaintiff, was not
appropriately supported as required by SSR 96-7p.   The court does
not agree.

"[P]ain must be constant, unremitting, and wholly unresponsive
to therapeutic treatment to be disabling." Chambliss v. Massanari,
269 F.3d 520, 522 (5th Cir. 2001).   The ALJ determines the
disabling nature of a claimant's pain, and the ALJ's decision is
entitled to considerable deference. Id.   When evaluating an
individual's own statements about his pain or other symptopms, SSR
96-7p provides:

> First, the adjudicator must consider whether there
> is an underlying medically determinable physical or
> mental impairment(s) . . . that could reasonably be
> expected to produce the individual's pain or other
> symptoms. . . .
>
> Second, once an underlying physical or mental
> impairment(s) that could reasonably be expected to
> produce the individual's pain or other symptoms has been

> shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. . . . [W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

1996 SSR LEXIS 4; see also 20 CFR § 404.1529 ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence, including your history, the signs and laboratory findings, and statements from you, your treating or nontreating source, or other persons about how your symptoms affect you.").

In assessing the credibility of Plaintiff's subjective complaints of pain, the ALJ followed the guidelines set forth in 20 CFR § 404.1529 and SSR 96-7p outlining the process by which a claimant's own statements about his symptoms are evaluated. The ALJ first found that a medically determinable impairment could reasonably be expected to cause Plaintiff's alleged symptoms.[66] Once the underlying impairment was established, the ALJ went on to find that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible.[67]

---

[66]   Tr. 231.

[67]   Tr. 230-31.

27

The ALJ did not disregard the extent to which the pain experienced by Plaintiff might limit his ability to function.  In fact, the opinion contains a discussion of the plaintiff's allegations of pain, including a detailed recitation of his medical history, specifically concluding that while plaintiff's alleged symptoms could be caused by his impairment, the degree of intensity, persistence and functional limitations professed by Plaintiff with respect to his pain were not substantiated by objective medical evidence.[68]

Plaintiff asserts that in reaching the credibility finding, the ALJ failed to consider some of the factors required by SSR 96-7p such as: (1) "[f]actors that precipitate and aggravate the symptoms;" (2) "[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;" (3) "[t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms;" (4) "any measures other than treatment the individual uses or has used to relieve pain or other symptoms."[69]

A thorough review of the record indicates that there is substantial evidence from which the ALJ could have drawn to assess these factors in reaching his adverse credibility finding.

---

[68]    Tr. 230-31.

[69]    PMSJ at p. 10; see also SSR 96-7p.

28

Moreover, the ALJ's written decision specifically addresses most of the factors cited by Plaintiff. For example, the decision discusses the fact that Plaintiff was at one point taking up to 100 milligrams of Morphine three times a day[70] and at times received steroid injections for treatment of his lower back pain.[71] Also, the ALJ noted that in order to relieve his pain, Plaintiff testified that he lay on the couch, used a heating pad and soaked in a hot tub.[72]

It is clear from the ALJ's extensive discussion of the Plaintiff's medical history, replete with Plaintiff's own subjective complaints of pain, that the ALJ's credibility finding was not "based on an intangible or intuitive notion about [his] credibility." SSR 96-7p. Furthermore, the reasons for the credibility finding were "grounded in the evidence and articulated in the decision." Id. The ALJ notes that Plaintiff testified that he was unable to work due to partially crushed joints and that he experienced pain because his sciatic nerve was under pressure.[73] The ALJ also acknowledged that "the claimant's medically determinable impairments could reasonably be expected to

---

[70]     Tr. 230.

[71]     Tr. 231-2.

[72]     Tr. 230.

[73]     Tr. 230.

29

cause the alleged symptoms."[74]   Nevertheless, the ALJ went on to find that Plaintiff's alleged subjective symptoms were not supported by objective clinical evidence, specifically that Plaintiff had no neurological deficits, no serious orthopedic abnormalities, and no significant dysfunctioning of bodily organs that would preclude sedentary work.[75]   Furthermore, the ALJ found Plaintiff's own statements about his symptoms to be inconsistent with the degree of pain alleged, noting that, by January 11, 1990, Plaintiff was "feeling good;" on January 16, 1990, Plaintiff's back was "OK;"[76] and Plaintiff reported doing "reasonably well" following a steroid injection on August 16, 1995.[77]

Plaintiff also argues that the ALJ should have considered the extent to which Plaintiff suffered from depression. However, there is no evidence to support that during the relevant period Plaintiff suffered such depression.  Other than Dr. Royce Watts' letter indicating that Plaintiff's psychological evaluation revealed a "moderately severe adjustment reaction with symptoms of anxiety and depression,"[78] there is no other evidence to show that Plaintiff suffered from depression during the relevant period or

---

[74]     Tr. 230.

[75]     Tr. 231.

[76]     Tr. 231.

[77]     Tr. 231.

[78]     Tr. 114.

that it would have precluded him from engaging in sedentary work. Although Dr. Watts suggested counseling and relaxation training, there is no evidence that Plaintiff ever received treatment.

Substantial record evidence supports the ALJ's evaluation of the Plaintiff's subjective complaints, therefore the court must defer to the ALJ's assessment.  See Villa, 895 F.2d. at 1024.  It is not enough that Plaintiff suffers from a medically determinable condition undoubtedly accompanied by symptoms of pain.  He must suffer from pain that is "constant, unremitting, and wholly unresponsive to therapeutic treatment." Chambliss, 269 F.3d at 522.  The ALJ did not find that to be the case, and the court is not at liberty to overrule the ALJ's evaluation of Plaintiff's credibility. See id.  Furthermore, it is quite possible that Plaintiff's ability to do some types of work may be limited by his experiencing some pain, but the inability to work without some pain will not in and of itself render him disabled.  See id.

**C. Defendant's Motion For Summary Judgment**

Defendant asserts in his motion that the ALJ's decision should be affirmed because the ALJ properly determined Plaintiff was never under a disability.

The court recognizes the seriousness of Plaintiff's medical conditions. However, the court must review the record with an eye toward determining only whether the ALJ's decision is supported by

31

more than a scintilla, but less than a preponderance of evidence. See Carey, 230 F.3d at 135. The court finds more than a scintilla of evidence in support of the ALJ's decision. Therefore, the court cannot overturn the decision of the ALJ, who is given the task of weighing the evidence and deciding disputes. See Chambliss, 269 F.3d at 522.

For the reasons stated above, the court finds Defendant satisfied his burden. As a result, the ALJ's decision finding Plaintiff not disabled is supported by substantial record evidence. The court also agrees with Defendant that the ALJ applied proper legal standards in evaluating the evidence and in making his determination. Therefore, summary judgment for Defendant is proper.

## IV. Conclusion

Based on the foregoing, the court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Cross Motion for Summary Judgment.

**SIGNED** in Houston, Texas, this 6th day of July, 2010.

Nancy K. Johnson
United States Magistrate Judge

32